## WITHDRAWAL OF CONSENTS VALID.

[Circuit Court of Cuyahoga County.]

CITY OF CLEVELAND v. CLEVELAND CITY RAILWAY CO. ET AL.

Decided, March 20, 1902.

*Street Railways—Consents by Abutting Owners to Building of—No Jurisdiction over Action of a Property Owner in that Behalf— Withdrawal of Consent for a Consideration, Valid—Injunction on Grounds of Morality.*

1. An abutting lot-owner may give or withhold or withdraw consent to the building of a street railway in front of his property, and whether he does the one or the other he incurs no liability, legal or equitable, to the city or its citizens on the one hand, or to an individual or corporation proposing, on the other hand, to construct and operate the railway under a contract with the city; and his action or motives in that regard do not give jurisdiction over him to any court.

2. The proprietor of a street railway is not an agency of the state performing governmental functions which a threatened withdrawal of the consent of an abutting property owner would wrongfully obstruct.

3. It is not for courts to pass upon or attempt to regulate the morality of an action, unless a point is reached where some legal or equitable right is involved; and a withdrawal of consent by an abutting property owner to the building of a street railway, induced by a money consideration paid by a competing company, does not present such a case.

HALE, J.; CALDWELL, J., and MARVIN, J., concur.

These cases come into this court by appeal, and are submitted upon a general demurrer to the petition.

The same relief is asked in each petition, and substantially the same averments are contained in each. From these averments it appears that the city, by ordinance, designated a route through certain streets of the city for a street railroad route, and, by ordinance, prescribed the conditions upon and the manner in which the proposed railroad should be constructed and operated. This being done, the clerk advertised for proposals to construct the proposed road, and in response to such notice the plaintiff in one of the cases, Hoefgen, submitted a proposal to construct

and operate the road in accordance with the terms and conditions prescribed in the ordinance, and to carry passengers at a three-cent fare on the proposed road. He submitted also with his bid a deposit of $50,000 at the time of the proposal, to insure the faithful performance on his part of the terms of the proposals made.

His was a bid proposing to carry passengers for the lowest rate of fare; indeed, I suppose it was the only proposal submitted, although that does not appear from the petition.

It is then alleged that the defendants, the railway companies, confederated and conspired with the other defendant, they being in a monopoly of the street railroad business of the city, to defeat the city and this proposed contractor in the prosecution of this enterprise by inducing certain land owners along the route of the proposed railroad to withdraw consents already given to its construction, and wrongfully inducing other landowners to withhold consents by the use of corrupt and unlawful means, including the payment of money to accomplish such purpose. It is alleged that unless restrained by the order of the court, these corporations will pay to certain lot owners money for the consideration of the withdrawal and withholding consents already obtained. The court is asked to enjoin the doing of these threatened acts.

The question is: Do the petitions, or either of them, make a case for the relief asked? If the acts, which is alleged are threatened, will infringe or invade any of the rights of the plaintiff in either case, legal or equitable, then the demurrers to these petitions should be overruled; but, if no such effect follows from the doing of the acts that are alleged to be threatened, then the demurrer should be sustained.

Proceedings are had for the establishment of this railroad, under Sections 2501 and 2502, Revised Statutes. The provisions relating to the consent of lot owners are found in Section 2502, Revised Statutes, and provides in substance, that no contract by the city can be made for such improvements unless the contractor "shall have previously obtained the written consent of a majority of the property holders upon each street, or part

thereof, on the line of the proposed street railroad, represented by the feet front.''

It will be observed that the Legislature has not conferred the unlimited power upon the municipalities to permit streets to be used for railroad purposes, but only such streets as a majority of the property owners consent to such use. Without such consent the city is not clothed with power to authorize the construction or operation of a street railroad on the streets designated in this proposed route.

It will be conceded that neither the city nor Hoefgen has any cause of action against the lot owners for either withholding or withdrawing consent. The lot owner may give or withdraw his consent at will. It is, however, a voluntary matter with him. Whether he does the one or the other, he incurs no liability, legal or equitable, to the city, its citizens or an individual, or corporation proposing, under contract with the city, to construct and operate a railroad in the street on which he resides. The lot owner, by remaining passive, is wholly outside of the controversy—no party to the transaction, and in no sense responsible for the success or failure of the enterprise. Moreover, his reasons or motives for giving or withholding consent are wholly immaterial. The fact that one is a lot owner upon one of the streets upon which it is proposed to construct this railroad does not confer upon any tribunal jurisdiction to inquire into his motives for giving or withholding his consent, or in any way to question his right to thus act.

It is said, however, that a third party who induces this lot owner, by persuasion or by the payment of money, to withhold his consent which neither the city nor the contractor has any legal or equitable right to claim, violates the legal or at least the equitable rights of the city and the contractor; that in some way there is created in favor of the city and contractor a cause of action, legal or equitable, for inducing the lot owner to withdraw his consent for which no cause of action, legal or equitable, is created against him. This would seem to be most extraordinary if true. We are cited to no case, and have found none, sustaining or tending to sustain such a proposition.

Our attention is called to an unreported decision of the circuit court in Butler county, Ohio, wherein it is held that the consent of a lot owner purchased by the proposed bidder can not be counted. This may be correct. The bidder seeking a contract with the city in his own interest, can not purchase consent of a lot owner. The transaction is one directly connected with the proposed contract, and involves the acts of one of the parties thereto, and the courts hold that he can not take advantage of his own wrong. The rights of a lot owner are not discussed in that case at all. There is no analogy between that case and the one we are considering. Dealings between lot owners and third parties upon a subject-matter which he alone controls and over which the city has no authority whatever, is, in our judgment, wholly without the jurisdiction of courts, to control at the instance of the city or the proposed contractor. We are of the opinion that by the averments of the petition no invasion or impairment of the legal or equitable rights of the city or the contractor is shown.

One other phase of the case may be reverted to but not discussed. We do not think that these petitions can be sustained on the theory that the proprietor of a street railroad is an agency of the state performing a governmental function which the threatened transaction will wrongfully obstruct, in a way to give the court jurisdiction to enjoin.

A street railroad is not strictly a street improvement. It provides a means of transit for public benefit and convenience, no doubt, but is, nevertheless, a private enterprise of an individual or corporation, subject to such regulations and restrictions as are provided by statute and that the municipality is authorized to impose. The individual or corporation exercises complete dominion over the property invested in such enterprise.

The city, charged with the control of the streets, may or may not, with the consent of the majority of the property owners thereon, permit the use of the street for such purpose, but the city is not authorized in its governmental capacity to become the owner of a street railroad and to prosecute the business incident to such ownership, nor can it confer, in our judgment,

governmental function upon the proprietor of such street railroads to prosecute such enterprise.

The morality of the act sought to be prevented by injunction is not for courts to pass upon or attempt to regulate unless a point is reached where some legal or equitable right is invaded. Independent of any impairment of such rights, the remedy must be sought with the Legislature and not with the courts.

We are of opinion that these petitions, neither of them, state a cause of action upon which the relief asked can be granted, and the demurrer to each is sustained and the petitions dismissed.

*Beacon, Baker & Payer*, for plaintiff.

*Squire, Sanders & Dempsey* and *A. F. Ingersoll*, for defendants.